WIGGINTON, Judge.
Plaintiff seeks review of an adverse summary final judgment rendered in favor of defendants in a suit seeking recovery of a real estate brokerage commission.
Defendants-owners entered into an exclusive brokerage contract with plaintiff-broker by which plaintiff agreed to sell defendants’ real estate at an agreed price upon terms and conditions as may thereafter be agreed upon between defendants-sellers and the prospective buyer. In the summary judgment appealed the trial court held that, in order for plaintiff to be entitled to the real estate commission claimed by it, it was first obligated to either take from a customer a binding contract of purchase or, in the alternative, present to the sellers a purchaser who was actually ready, able, and willing to buy on terms prescribed by the owners in the listing contract. The court found that the brokerage contract itself specified no terms of the sale and that none were ever agreed upon between defendants and any prospective purchaser produced by plaintiff. The pleadings and evidence in the file admit of no dispute with respect to the facts found by the trial court, as a result of which defendants were awarded judgment as a matter of law.
The material facts upon which the summary judgment is based are not in substantial dispute. The exclusive right-to-sell contract prepared by appellant and signed by appellees gave appellant the exclusive right to sell appellees’ land at a stated purchase price plus commission. The contract contained no terms of sale but provided: “Terms: as agreed by the buyer and seller”. Appellant procured and submitted to appellees two written option contracts identical in form and substance and signed by persons proposing to purchase from appel-lees the land in question at the agreed purchase price. These contracts contained terms which appellant understood might be acceptable to appellees but which were nothing more than options binding appel-lees to sell but not binding the proposed purchasers to buy. These contracts were submitted to appellees through their attorney but which, upon consideration, were rejected both because the terms specified in the contracts were unacceptable to ap-pellees and their attorney and because at *773 that time appellees had reconsidered and decided not to sell their land on any condition. At the time appellant submitted the option contracts to appellees’ attorney, it stated that its prospective purchasers would be willing to meet any terms which might be specified by appellees in the event the terms set forth in the proposed contracts were unacceptable. The record is silent as to whether such verbal offer was ever conveyed to appellees by their attorney. When appellees announced their intention to withdraw their land from the market and not sell it under any terms or conditions, appellant instituted this action for recovery of a brokerage fee which it claims it earned and is due it under its brokerage contract.
Appellant relies as grounds for reversal upon the well-established principle recognized in Florida to the effect that where a broker procures a customer willing, ready, and able to purchase property offered for sale according to the terms of the offer, and the transaction is defeated on account of some fault of the principal, the broker is entitled to his commission although the transaction is not consummated.[1] This principle of law presupposes, however, that the brokerage contract between the seller and his broker completely specifies the terms of sale which are acceptable to the seller, or that the terms of sale are ultimately agreed upon between the seller and the buyer procured by the broker. Such, of course, was not true in the case sub judice. In order to avoid this impediment to the application of the general rule, appellant contends that the prospective purchasers procured by it had expressed their willingness to meet any terms which might be proposed by ap-pellees as a condition of sale and, therefore, such offer brings them within the operation of the general rule above stated. With this contention we are unable to agree.
The general rule recognized by Corpus Juris Secundum is that where a broker has performed his part of the contract of employment by producing a purchaser ready, able, and willing to purchase on the terms proposed by the seller, the broker’s right to the agreed compensation may not be defeated by the refusal of the seller to complete the transaction or consummate the sale. A recognized exception to this rule is where the principal has not specified terms of sale, in which event the broker does not perform his duty until he produces a buyer to whom the principal actually sells his property.[2]
The author of American Jurisprudence states the general rule to be that where the listing agreement fails to fix the terms for the sale, the principal is free to terminate the negotiations without liability to the broker. In such a case, the broker may be denied compensation unless he produces a purchaser ready, able, and willing to buy on such terms as the seller may require, or as he accepts, or unless the seller and the purchaser reach a definitive oral or written agreement.[3]
In recognition of the foregoing rule, the Supreme Court of Louisiana has held that where a real estate broker produces a purchaser ready, willing, and able to purchase land on specified terms, the broker is entitled to his compensation; but, where the terms are not specified and the actual sale is to be negotiated by the seller, the broker’s duty is not performed until he produces a purchaser with whom the seller agrees as to terms or to whom he sells his property.[4]
It is important to note that in the case sub judice the brokerage contract sued upon by appellant is what is characterized *774 in law as one granting a “right to sell” as distinguished from a “right to find or procure a purchaser”. The distinction between these two types of contract was emphasized by our Supreme Court in Knowles v. Henderson [5] in which the court stated that the law makes a distinction between the employment of a real estate broker to find or procure a purchaser for the property of another and the employment of a broker to effect the sale of such property. The court held that under the first type of employment contract the broker is required only to procure a purchaser ready, willing, and able to perform upon the terms fixed in order to be entitled to his commission, leaving to the seller the actual closing of the sale. The court pointed out that under the second type of employment contract the broker is not entitled to his commission until he not only has found a purchaser who is ready, willing, and able to buy upon the terms fixed by the seller but has also actually effected the sale or procured from the prospective purchaser a binding contract of purchase within the terms of his authority. In conclusion, the court held that, accordingly, a broker who has been employed to effect or consummate a sale will not ordinarily be entitled to his commission if he has done nothing more than produce a purchaser ready, able, and willing to buy even upon the terms authorized — for in such case he has not completed his contract.
In the earlier case of Hart v. Pierce[6] our Supreme Court acknowledged its consistent adherence to the principle that where a broker is employed to “sell” property as distinguished from one employed to “find a purchaser” ready, able, and willing to buy, he is not, as a general rule, entitled to compensation until he (1) completes the sale, leaving nothing for the owner to do but execute the necessary transfer of title, or (2) procures from his customer a binding written contract of purchase within the terms of his contract of employment.
In the case sub judice the brokerage contract between appellant and appellees was one granting a right of sale and not one to procure a ready, willing, and able purchaser. No terms of the sale were specified in the contract nor were any ever agreed upon by appellees and a purchaser procured by appellant, nor was the sale actually consummated between appellees and such purchaser. Under these circumstances, appellant has not demonstrated its right to the brokerage commission claimed by it under the contract sued upon.
It would therefore appear that a brokerage contract to sell property which does not specify the exact terms of sale which the owner requires and is willing to accept is a weak foundation upon which to base a claim for brokerage commissions. Regardless of the financial ability and good faith of a prospective purchaser procured by the broker, the owner is free to specify any terms which might suit his whim or fancy, or, before acceptance, to refuse all offers and withdraw the property from the market without reason or just cause. The only circumstances under which the broker may properly claim compensation for services rendered under a contract of this kind is where the seller actually conveys his property to a purchaser procured by the broker, or the broker produces a binding contract signed by a purchaser ready, willing, and able to buy the property at the price and on terms required by and acceptable to the seller.
Based upon the foregoing authorities, we conclude that the summary final judgment rendered by the trial court herein conforms to established principles of law as applied to the undisputed facts in this case and is accordingly affirmed.
CARROLL, DONALD K., Acting C. J., and RAWLS, J., concur.

. Davis v. Battle, 132 Fla. 240, 182 So. 243, 245, 117 A.L.R. 742; Hutchins & Co. v. Sherman, 82 Fla. 167, 89 So. 430.

. 12 C.J.S. Brokers § 95(2), pp. 222, 223.

. 12 Am.Jur.2d 929, Brokers, § 187.

. Hoggatt v. John, 185 La. 227, 169 So. 69, 71.

. Knowles v. Henderson (1945) 156 Fla. 31, 22 So.2d 384, 385.

. Hart v. Pierce, 98 Fla. 1087, 125 So. 243.